## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA,
## TAMPA DIVISION

**JAMES ROCK,**                             Case No.: _:__-cv-____
**Plaintiff,**

**v.**

**MEGAN J. BRENNAN,**
**POSTMASTER GENERAL,**
**United States Postal Service**
**(Southern Area),**
**Defendant.**
_____/

### PLAINTIFF JAMES ROCK'S COMPLAINT

Plaintiff, James Rock, by and through his undersigned counsel, files this, his complaint against Defendant, Megan J. Brennan, Postmaster General, United States Postal Service, (Southern Area) (hereinafter, "Defendant"), an employer as defined in the state of Florida, and states as follows in support thereof:

### NATURE OF THE ACTION

1. This is a proceeding for reinstatement, damages and injunctive relief to redress the deprivation of rights secured to Plaintiff by Sections 501 and 504 of the Rehabilitation Act of 1973 29 U.S.C. §§ 701 et seq.

### PARTIES

2. James Rock is an individual currently residing in Florida. He is a citizen of the United States and a resident of the state of Florida. Plaintiff is a person entitled to protection pursuant to the provisions of the Rehabilitation Act of 1973 29 U.S.C. §§ 701 et seq.

3.  At all relevant times, Plaintiff James Rock was an employee of Defendant.

4.  On information and belief, Defendant is an agency of the Federal Government with a place of business in Manasota, Florida.

5.  At all times relevant to the allegations in this Complaint, Defendant operated from a facility within the Middle District of Florida.

6.  Defendant is engaged in postal or parcel services.

7.  At all relevant times, Defendant employed more than 75 people.  Defendant was the employer of Plaintiff James Rock at all times relevant to this action.

## JURISDICTION

8.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, as this matter involves a federal question based upon the Rehabilitation Act of 1973 29 U.S.C. §§ 701 et seq.  This Honorable Court has jurisdiction over this matter as this case arises under the equal protection clause of the Fourteenth Amendment to the United States Constitution and poses a question of federal law.

9.  The Tampa District Court is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the District and Division in which a substantial part of the events or omissions giving rise to the claims occurred.

## VENUE

10.  The unlawful employment practices alleged below were within the state of Florida, Sarasota/Manatee Counties.  Accordingly, venue lies in the United States

District Court for the Middle District of Florida, Tampa Division under 29 U.S.C. § 1391(b) and 28U.S.C. § 1391(a).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.   Plaintiff James Rock timely filed this action, as was his right, after receiving a written appeal decision from the U.S. Equal Employment Opportunity Commission, Office of Federal Operations.  A copy of said decision is attached hereto and marked Exhibit "A." Said Exhibit "A" is incorporated herein as though set forth in full. Plaintiff regrets said E.E.O.C. has failed to effect voluntary compliance with the requirements of the Rehabilitation Act of 1973 29 U.S.C. §§ 701 et seq. on the part of said Defendant.

## STATEMENT OF FACTS

### Background facts

12.   James Rock worked as a mail handler for the U.S.P.S.

13.   He was diagnosed with Type I Diabetes in 1999.

14.   January 9, 2014, he obtained intermittent FMLA leave, allowing for absence one or two times a month for 3-4 hours per episode.

15.   James Rock had a letter of warning from July 26, 2011 rescinded and removed from his record.

16.   Likewise, 14- or 7-day suspensions from December 15, 2011, August 21, 2012, and December 6, 2013 were rescinded and removed from his record.

17.   On or about February 4, 2014, a 14-day suspension was rescinded and removed from his record.  He was accused of having damaged a men's room with human waste

and destroying a paper seat dispenser.  Time records would later show he was not at work on the day in question (January 14, 2014).

18.   He was transferred to the U.S.P.S.'s production and distribution center at Manasota, Florida, after a successful grievance signed February 2015.

19.   The sole accommodation provided was not to be assigned to work between midnight and 5 a.m.

20.   His mother works there as a maintenance supervisor, and his brother also worked there.  He hoped to have a better experience at the new facility.

21.   Rock's former supervisor, Marie Schofield, noted in a deposition she was frustrated when Rock asked for a union steward when she approached him prior to October 29, 2015.

22.   Schofield even quoted Rock as saying to her, "I want to see a steward" and "you are harassing me."

23.   On November 13, 2015, he was removed from the workplace for insubordination.

24.   Rock had previously complained to management that Everett Attebury sexually harassed him.  No discipline issued to Rock after the security video showed it was Mr. Attebury who was the aggressor.

25.   Ms. Schofield would later admit in deposition her errors and shortcomings. AB Adams, Anjanette Allender and Paul Clayton criticized her for failing to provide narrative and forms and for providing incorrect information and not changing her request for discipline.

26.     On November 15, 2015, the Agency issued a 14-day suspension for improper conduct. It was never served as Rock filed a grievance at the same time.

27.     Rock's 14-day suspension notice letter dated November 12, 2015, lists his union steward requests as a basis for discipline.

28.     Ms. Schofield admitted in her deposition Rock's meeting with his union stewards did not have an impact on production.

29.     This letter was issued by Ms. Schofield without any sworn corroborating witness statements.  She admitted she typically would not issue this discipline without them.

30.     Rock never served this suspension.

31.     On January 6, 2016, Rock filed a grievance where he stated the 14-day letter was "direct retaliation for (his) disability."

32.     Rock claimed in his grievance the discipline was, "direct retaliation for (his) disability."  He requested the Agency "rescind & expunge 14-day suspension, cease and desist all harassment, discrimination & retaliation."

## Facts

33.     Rock and co-worker Nathan Elliot had two altercations on in 2015, one on March 5, 2016.

34.     On March 3, 2016, Rock emailed Ira Edelstein and told him he was being harassed by Ms. Schofield for his requests for reasonable accommodation and specifically stated, "I feel threatened by Supv. Schofield."

35.   On March 5, 2016, Schofield ordered Nathan Elliot to take over Rock's station and to remain there even after he returned from break.

36.   Mr. Elliot and Rock had not worked on the same shift since February 2015 when Ms. Schofield scheduled them together on March 5, 2016.

37.   In his deposition, Mr. Elliot expressed concern to Ms. Schofield that there would be a confrontation.   Elliot reported not feeling threatened by Rock and remained at Rock's station until the job was done.

38.   Prior to March 5, 2016, co-worker Nathan Elliot called Rock a "fag" and threatened to "kick his ass."

39.   On March 5, 2016, Rock reported the incident to management, a threat assessment was conducted, and both men were equally named as the victim.  There was no determination as to either employee being the aggressor.

40.   After the March 5, 2016 incident, Rock was interviewed four times.  He claimed from the outset he was not the aggressor.

41.   Rock was concerned enough to call the police on March 5, 2106.

42.   Mr. Elliot was given an investigative interview and was issued a letter of warning as a result of the March 5, 2016 incident.

43.   Rock told Ms. Scofield during investigative interviews he felt she orchestrated the March 5, 2016 incident to establish a basis for discipline against him.

44.   The March 5, 2016 incident was provoked by Ms. Schofield.  Mr. Elliot testified in his deposition the altercation would not have occurred if Ms. Scofield had not ordered him to Rock's work-station, over Elliot's strong objection.

45. Ms. Schofield admitted in her deposition she failed to disclose her role in the March 5, 2016 incident.

Ms. Schofield failed to disclose her role in this, even during a later arbitration over the issue.

46. On or about March 23, 2016, Ms. Schofield stated, "I'm going for another 14-day suspension, to show I've given him enough chances."

47. Rock reported the incident to management that day, not Elliot. Ms. Schofield later attempted to use Rock's calling the police to support requesting discipline against Rock for that incident.

48. On or about April 26, 2016, Mr. Elliot was supposedly given a polygraph test by investigator K. Boyle. He was not asked any questions about any threats by Rock to Mr. Elliot.

49. On May 2, 2016, field attorney for N.L.R.B. region 12, John King, wrote to Rock and stated there was a request for a 14-day suspension for an alleged verbal altercation between Rock and Nathan Elliot, "however, there was nothing to substantiate the allegation, and no discipline was issued."

50. Throughout discovery at the administrative level, it was made clear Rock's protected activity was the main reason and motivation for the Agency's desire to remove him.

51. Rock contends he was required to work end of tour overtime on October 13, 2015, January 12-14, 2016, February 27, 2016 and March 1, 2016.

52.     On or about April 26, 2016, Mr. Elliott underwent a polygraph exam about the March 5, 2016 the incident with Rock.

53.     Rock cites disparate treatment regarding RMO Schofield issuing a co-worker, Mary Wagner, a letter of warning for using profanity on May 21, 2016, whereas Rock was removed from the workplace.

54.     On August 16, 2016, the Agency issued a notice of removal of Rock.

55.     The Agency demonstrated retaliatory animus.   His termination was pretextual.   The Agency relied on rescinded discipline, which cannot justify termination.

56.     The Agency had insufficient evidence to remove Rock prior to June 16, 2016.

57.     Supervisor Paul Clayton and Rock completed an interview on July 14, 2016.

58.     There is nothing in any of the Agency's regulations that noncooperation is a basis for removal.

59.     Mr. Clayton never interviewed Mr. Elliot.

60.     Clayton treated Mr. Elliot's statement as if it was one given by Mr. Elliot to complain to management about Rock.  This was incorrect.

61.     The Postal Inspector's memorandum on the incident states it was relating to the conduct of Nathan Elliot.  Clayton incorrectly believed in his deposition it was Elliot and not Rock, who first complained to management about the March 5, 2016 incident.

## CLAIMS

## COUNT I: RETALIATION

62.     Plaintiff James Rock realleges and incorporates in this Count I paragraphs 1 through 61.

63.     Rock engaged in protected activity or opposition.  He filed grievances after being sexually harassed.

64.     Rock suffered adverse employment actions including investigation suspensions and termination.

65.     A causal connection exists between Rock's protected activity and the adverse action.

66.     Plaintiff suffered damages as a result of Defendant's retaliatory conduct.

67.     Rock may establish a *prima facie* case of retaliation by showing that: (1) he engaged in a protected activity; (2) the Agency was aware of the protected activity; (3) subsequently, he was subjected to adverse treatment by the Agency; and (4) a nexus exists between the protected activity and the adverse treatment. *Whitmire v. Department of the Air Force,* E.E.O.C. Appeal No. 01A00340, 2000 EEOPUB LEXIS 6185 (September 25, 2000); *Corbett v. Napolitano,* 897 F. Supp. 2d 96, 111 (E.D.N.Y. 2012) (to establish a *prima facie* retaliation claim under Title VII, an employee must show (1) he was engaged in an activity protected under Title VII; (2) the employer was aware of Plaintiff's participation in the protected activity; (3) the employer took adverse action against Plaintiff; and (4) a causal connection

existed between the Plaintiff's protected activity and the adverse action taken by the employer).

68.    Here the first prong is satisfied as Rock filed grievances and made charges directly against Clayton and Schofield prior to being removed on August 12, 2016. *Smith v. Henderson,* CIVIL ACTION No. 00-4310, 2001 U.S. Dist. LEXIS 13465, at *l (E.D. Pa. August 30, 2001); E.E.O.C. Compliance Manual, Section 8 (Retaliation) (An individual is protected from retaliation for having made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, the A.D.E.A., the E.P.A., the A.D.A., the Rehabilitation Act, or GINA).

69.    Regarding the second prong, both Schofield and Clayton admitted to receiving their respective Grievances before the adverse employment action at issue in this matter. The third prong is also sufficed, by Rock being removed on August 12, 2016.

70.    The fourth prong, causal connection or nexus, may be proved directly by evidence that on its face shows or admits retaliatory motive, it is more typically demonstrated by what one appellate Court has described as a "convincing mosaic" of circumstantial evidence that would support the inference of retaliatory animus. *Cloe v. City of Indianapolis,* 712 F.3d 1171 (7th Cir. 2013); *Jha v. VA,* 2016 MSPB LEXIS 3817, *41-42 (M.S.P.B. June 30, 2016). The pieces of that "mosaic" may include, for example, suspicious timing, verbal or written statements, comparative evidence that a similarly-situated employee was treated differently, t h e  falsity

of the employer's proffered reason for the adverse action, or any other "bits and pieces" from which an inference of retaliatory intent might be drawn. *Ibid. See also Tellez v. Dep't of the Army,* E.E.O.C. Request No. 05A41133, 2005 EEOPUB LEXIS 1233 (Mar. 18, 2005); Iliana S. *v. Yang,* 2016 EEOPUB LEXIS 1941, *36, 117 FEOR (L.R.P.) 44, E.E.O.C. (I.H.S.) 120123242 (E.E.O.C. July 11, 2016).

71.    It is evident from the undisputed written and oral statements made by the Agency that Rock's protected activity has a causal connection with his removal, including, but not limited to, the below:

  a. Schofield's November 12, 2015 Suspension Letter, which was required as part of the progressive discipline to remove him, quoted Rock as saying, "I want to see a steward" and "You are harassing me" as a basis for her discipline.

  b. Schofield stated she knew Rock never served his November 12, 2015 Suspension because "he filed a Grievance."

  c. Schofield admitted to causing the March 5, 2016 incident (which was later used as the primary basis for Rock's removal) and failed to disclose her involvement before her deposition.

  d. Schofield stated Rock's "EEO Redress for another 14-day suspension, "was a basis for seeking discipline against Rock for the March 5, 2016 incident.

  e. Clayton stated he in part issued the Emergency Placement on June 8, 2016, after Rock stated he would file labor charge.

72.     In addition to the above direct evidence.  The below facts create a convincing "mosaic": suspicious t iming; verbal or written statements; disparate t reatment; Elliot had a single investigative interview with Schofield and was issued a Letter of Warning.  Rock was removed.

73. Employer's reasons for the adverse actions were false.

74.     Ms. Schofield failed to disclose she was directly responsible for causing the March 5, 2016 altercation.

75.     Clayton admitted he did not have any evidence that Rock's conduct on June 7, 2016 met the criteria of warranting an Emergency Placement, without pay, for an indefinite time.

76.     Rock's conduct on July 14, 2016 w a s  n o t  uncooperative.

77.     Clayton admitted noncooperation was not grounds for removal, despite charging Rock with it in his removal letter.

7 8 .   Inference of Retaliatory Intent: (1) Clayton stated in his Removal that Rock threatened Elliot.  Elliot stated he did not feel threatened by Rock on March 5, 2016.   (2) Elliot warned Schofield that he and Rock would get into an altercation, but she ordered Elliot to remain at Rock's station even after Rock returned.   (3) Long before Rock's Removal, the N.L.R.B. determined there was insufficient evidence to discipline either Rock or Elliot for the March 5, 2016 altercation.

79.    As of March 28, 2016, there was insufficient evidence for AB Adams to determine "what [Schofield] was trying to accomplish" in seeking discipline for the March 5, 2016 incident.

80.    Both Clayton's Investigative Interviews on June 7 and July 14, 2016 were unnecessary.

81.    Furthermore, the fact that Rock alleged explicitly in his Grievance against Clayton that Clayton "was angry" and threatened to fire Rock on June 7, 2016 and that Schofield's discipline was "direct retaliation for [his] disability" in his grievance against her, both of which were received before his removal, makes the retaliatory motives of these disciplinarians all the more apparent. *Russell v. Dep't of the Treasury,* 2017 MSPB LEXIS 2863, *8-9 (M.S.P.B. June 28, 2017) (retaliation is more apparent when grievances cast agency officials in a particularly negative light, or that they were adversely affected by the filing of the grievances); *Adams v. G.S.A.,* 2017 MSPB LEXIS 770, *58 (M.S.P.B. February 16, 2017).

82.    Rock meets the first three elements necessary to set forth his *prima facie* claim of retaliation.

83.    With regard to nexus/causation, Rock can demonstrate undisputed written and verbal statements made by the Agency responsible for discipline that constitute both direct and circumstantial evidence of a retaliatory motive.

84. Retaliation was the motive behind the ultimate discipline issued by Clayton. The event used as the primary basis for this final discipline was itself caused by Ms. Schofield.

### Evidence of pretextual retaliation

85. Rock's termination shows a pretext for retaliation.

86. It is "well-established that the internal inconsistencies, implausibility, or contradictions in an employer's explanation of the challenged employment decision may be evidence of pretext for discrimination or retaliation." *Conroy v. Vilsack,* 707 F.3d 1163 (10th Cir. 2013); *Complainant v. Archuleta,* 2013 EEOPUB LEXIS 3388, *42, 114 FEOR (L.R.P.) 128, E.E.O.C. (I.H.S.) 0120120901 (E.E.O.C. December 2, 2013); *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994) (Plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons for their action as to rationally find them "unworthy of credence," and hence infer that the employer did not act for the asserted nondiscriminatory reasons). *See also Smith v. Henderson,* CIVIL ACTION No. 00-4310, 2001 U.S. Dist. LEXIS 13465, at *1 (E.D. Pa. August 30, 2001).

87. Deviation from standard procedures without explanation or justification is subject to heightened scrutiny and may be sufficient to demonstrate pretext. *Monroe v. Navy,* E.E.O.C. Request No. 05950248, 1996 EEOPUB LEXIS 1278 (August 8, 1996).

88.  As repeatedly set forth above, Ms. Schofield herself wrongfully forced Elliot into the March 5, 2016 altercation with Rock, then failed to disclose this critical fact over the course of several E.E.O.C. inquiries.

89.  The Agency knew Ms. Schofield did not have enough evidence even to determine "what [she] was trying to accomplish" by March 28, 2016, which is supported by the N.L.R.B. determining on May 2, 2016 that there was insufficient evidence to discipline either Rock or Elliot for the March 5, 2016 incident.

90.  Mr. Clayton testified he gleaned false information from Ms. Schofield directly.

91.  It is unexplained why he chose only to further investigate Rock, despite all evidence reflecting the Postal Inspectors were focused solely on Mr. Elliot's conduct.

92.  This comports with the facts, which clearly show Elliot was not polygraphed about any threats from Rock to him, only threats from him to Rock.

93.  In terms of deviation from procedure, Schofield and Clayton's testimony also gave conflicting explanations as to the issue of execution of disciplinary letters by a concurring official.

## COUNT II: RETALIATION

94.  Plaintiff James Rock realleges and incorporates in this Count II paragraphs 1 through 61.

95.    This is a cause of action for retaliation under the Rehabilitation Act of 1973

29 U.S.C. §§ 701 et seq.

96.    Plaintiff James Rock engaged in the statutorily protected activities of filing

grievances for disability discrimination and receiving one reasonable accommodation.

He suffered adverse employment actions of suspensions, investigations and

termination.  The causal link between these events is demonstrated, at least in part,

by the proximity in time to these events. But for the discrimination and retaliation

by the Defendant's agents toward Plaintiff James Rock, he would be employed by

U.S.P.S.

97.    Plaintiff James Rock's employment was terminated by Defendant on or about

August 16, 2016.

98.    Defendant refused to retain Plaintiff James Rock.

99.    Defendant's refusal to retain Plaintiff James Rock was in retaliation against

Plaintiff James Rock.

100.    Rock may establish a *prima facie* case of retaliation by showing that: (1)

he engaged in a protected activity; (2) the Agency was aware of the protected

activity; (3) subsequently, he was subjected to adverse treatment by the Agency;

and (4) a nexus exists between the protected activity and the adverse treatment.

*Whitmire v. Department of the Air Force,* E.E.O.C. Appeal No. 01A00340, 2000

EEOPUB LEXIS 6185 (September 25, 2000); *Corbett v. Napolitano,* 897 F. Supp.

2d 96, 111 (E.D.N.Y. 2012) (to establish a *prima facie* retaliation claim under Title VII, an employee must show (1) he was engaged in an activity protected under Title VII; (2) the employer was aware of Plaintiff's participation in the protected activity; (3) the employer took adverse action against Plaintiff; and (4) a causal connection existed between the Plaintiff's protected activity and the adverse action taken by the employer).

101.    Here the first prong is satisfied as Rock filed grievances and made charges directly against Clayton and Schofield prior to being removed on August 12, 2016. *Smith v. Henderson,* CIVIL ACTION No. 00-4310, 2001 U.S. Dist. LEXIS 13465, at *l (E.D. Pa. August 30, 2001); E.E.O.C. Compliance Manual, Section 8 (Retaliation) (An individual is protected from retaliation for having made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, the A.D.E.A., the E.P.A., the A.D.A., the Rehabilitation Act, or GINA).

102.    Regarding the second prong, both Schofield and Clayton admitted to receiving their respective Grievances before the adverse employment action at issue in this matter. The third prong is also sufficed, by Rock being removed on August 12, 2016.

103.    The fourth prong, causal connection or nexus, may be proved directly by evidence that on its face shows or admits retaliatory motive, it is more typically demonstrated by what one appellate Court has described as a "convincing mosaic" of circumstantial evidence that would support the inference of retaliatory animus.

*Cloe v. City of Indianapolis,* 712 F.3d 1171 (7th Cir. 2013); *Jha v. VA,* 2016 MSPB LEXIS 3817, *41-42 (M.S.P.B. June 30, 2016). The pieces of that "mosaic" may include, for example, suspicious timing, verbal or written statements, comparative evidence that a similarly-situated employee was treated differently, t h e falsity of the employer's proffered reason for the adverse action, or any other "bits and pieces" from which an inference of retaliatory intent might be drawn. *Ibid. See also Tellez v. Dep't of the Army,* E.E.O.C. Request No. 05A41133, 2005 EEOPUB LEXIS 1233 (Mar. 18, 2005); Iliana S. *v. Yang,* 2016 EEOPUB LEXIS 1941, *36, 117 FEOR (L.R.P.) 44, E.E.O.C. (I.H.S.) 120123242 (E.E.O.C. July 11, 2016).

104.    It is evident from the undisputed written and oral statements made by t h e A g e n c y that Rock's protected activity has a causal connection with his removal, including, but not limited to, the below:

a. Schofield's November 12, 2015 Suspension Letter, which was required as part of the progressive discipline to remove him, quoted Rock as saying, "I want to see a steward" and "You are harassing me" as a basis for her discipline.

b. Schofield stated she knew Rock never served his November 12, 2015 Suspension because "he filed a Grievance."

c. Schofield admitted to causing the March 5, 2016 incident (which was later used as the primary basis for Rock's removal) and failed to disclose her involvement before her deposition.

d. Schofield stated Rock's "EEO Redress for another 14-day suspension,

18

"was a basis for seeking discipline against Rock for the March 5, 2016 incident.

    e.  Clayton stated he in part issued the Emergency Placement on June 8, 2016, after Rock stated he would file labor charge.

105.   In addition to the above direct evidence. The below facts create a convincing "mosaic": suspicious timing; verbal or written statements; disparate treatment; Elliot had a single investigative interview with Schofield and was issued a Letter of Warning. Rock was removed.

106. Employer's reasons for the adverse actions were false.

107.  Ms. Schofield failed to disclose she was directly responsible for causing the March 5, 2016 altercation.

108.  Clayton admitted he did not have any evidence that Rock's conduct on June 7, 2016 met the criteria of warranting an Emergency Placement, without pay, for an indefinite time.

109.  Rock's conduct on July 14, 2016 was not uncooperative.

110.  Clayton admitted noncooperation was not grounds for removal, despite charging Rock with it in his removal letter.

111. Inference of Retaliatory Intent: (1) Clayton stated in his Removal that Rock threatened Elliot. Elliot stated he did not feel threatened by Rock on March 5, 2016. (2) Elliot warned Schofield that he and Rock would get into an altercation, but she ordered Elliot to remain at Rock's station even after Rock returned. (3) Far prior to Rock's Removal, the N.L.R.B. determined there was

insufficient evidence to discipline either Rock or Elliot for the March 5, 2016 altercation.

112.  As of March 28, 2016, there was insufficient evidence for AB Adams to determine "what [Schofield] was trying to accomplish" in seeking discipline for the March 5, 2016 incident.

113.  Both Clayton's Investigative Interviews on June 7 and July 14, 2016 were unnecessary.

114.  Furthermore, the fact that Rock alleged explicitly in his Grievance against Clayton that Clayton "was angry" and threatened to fire Rock on June 7, 2016 and that Schofield's discipline was "direct retaliation for [his] disability" in his grievance against her, both of which were received before his removal, makes the retaliatory motives of these disciplinarians all the more apparent. *Russell v. Dep't of the Treasury,* 2017 MSPB LEXIS 2863, *8-9 (M.S.P.B. June 28, 2017) (retaliation is more apparent when grievances cast agency officials in a particularly negative light, or that they were adversely affected by the filing of the grievances); *Adams v. G.S.A.,* 2017 MSPB LEXIS 770, *58 (M.S.P.B. February 16, 2017).

115.  Rock meets the first three elements necessary to set forth his *prima facie* claim of retaliation.

116.  With regard to nexus/causation, Rock can demonstrate undisputed written and verbal statements made by the Agency responsible for discipline that constitute both direct and circumstantial evidence of a retaliatory motive.

117. Retaliation was the motive behind the ultimate discipline issued by Clayton. The event used as the primary basis for this final discipline was itself caused by Ms. Schofield.

## Evidence of pretextual retaliation

118. Rock's termination shows a pretext for retaliation.

119. It is "well-established that the internal inconsistencies, implausibility, or contradictions in an employer's explanation of the challenged employment decision may be evidence of pretext for discrimination or retaliation." *Conroy v. Vilsack,* 707 F.3d 1163 (10th Cir. 2013); *Complainant v. Archuleta,* 2013 EEOPUB LEXIS 3388, *42, 114 FEOR (L.R.P.) 128, E.E.O.C. (I.H.S.) 0120120901 (E.E.O.C. December 2, 2013); *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994) (Plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons for their action as to rationally find them "unworthy of credence," and hence infer that the employer did not act for the asserted nondiscriminatory reasons). *See also Smith v. Henderson,* CIVIL ACTION No. 00-4310, 2001 U.S. Dist. LEXIS 13465, at *1 (E.D. Pa. August 30, 2001).

120. Deviation from standard procedures without explanation or justification is subject to heightened scrutiny and may be sufficient to demonstrate pretext. *Monroe v. Navy,* E.E.O.C. Request No. 05950248, 1996 EEOPUB LEXIS 1278 (August 8, 1996).

121.  As repeatedly set forth above, Ms. Schofield herself wrongfully forced Elliot into the March 5, 2016 altercation with Rock, then failed to disclose this critical fact over the course of several E.E.O.C. inquiries.

122.  The Agency knew Ms. Schofield did not have enough evidence even to determine "what [she] was trying to accomplish" by March 28, 2016, which is supported by the N.L.R.B. determining on May 2, 2016 that there was insufficient evidence to discipline either Rock or Elliot for the March 5, 2016 incident.

123.  Mr. Clayton testified he gleaned false information from Ms. Schofield directly.

124.  It is unexplained why he chose only to further investigate Rock, despite all evidence reflecting the Postal Inspectors were focused solely on Mr. Elliot's conduct.

125.  This comports with the facts, which clearly show Elliot was not polygraphed about any threats from Rock to him, only threats from him to Rock.

126.  In terms of deviation from procedure, Schofield and Clayton's testimony also gave conflicting explanations as to the issue of execution of disciplinary letters by a concurring official.

## COUNT III: SEX DISCRIMINATION

127.  Plaintiff reavers and incorporates by reference all of the allegations set forth in paragraphs 1 through 65 herein.

128.   Plaintiff was employed by Defendant.  Marie Schofield and Mr. Clayton were in a supervisory position.  Schofield could discipline Plaintiff.  Co-workers Nathan Elliot and Everett Attebury subjected Plaintiff to unwelcome sexual harassment. Examples include Elliot calling Rock a fag and threatening to kick his ass.  Plaintiff's sex was a determining factor in Defendant's decision to terminate him.  This conduct also fits the pattern of policy or custom within the Agency, as described in paragraphs 38-42 concerning Schofield instigating the incident between Elliot and Rock.  See *Bailey v. Runyon*, 167 F.3d 466 (8th Cir. 1999)(postal worker's reports of sexual harassment by a co-worker and tepid response by Post office supports jury verdict).

129.   This unwelcome sexual conduct was sufficiently severe or pervasive as to alter the terms and conditions of employment and created an intimidating, hostile and offensive work environment.   Defendant knowingly and willfully discriminated against Plaintiff on the basis of his sex in violation of the Civil Rights Act of 1964. Plaintiff was damaged as a result.  Additionally, he avers that Defendant's unlawful and discriminatory constructive termination of his employment on account of his gender violates the provisions of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2003 et seq., justifying an award, inter alia, of back pay, front pay, benefits and compensatory damages against Defendant.

## COUNT IV: DISABILITY DISCRIMINATION

130.   Plaintiff James Rock reavers and incorporates by reference all of the allegations set forth in paragraphs 1 through 61 herein.

131.    Plaintiff James Rock suffers from type 1 Diabetes disability.  This constitutes a physical impairment that substantially limits one or more major life activities.  He both has a record of such impairment and, upon information and belief, was regarded by his employer as being so impaired.

132.    Plaintiff James Rock's disability was both a determining factor and the but-for cause of  Defendant's decision to fire him.

133.    Defendant knowingly and willfully discriminated against Plaintiff James Rock on the basis of his disabilities in violation of the Rehabilitation Act of 1973.   In addition, he avers that Defendant's unlawful and discriminatory termination of his employment on account of his disability violates the provisions of the Rehabilitation Act of 1973 29 U.S.C. §§701 et seq., justifying an award, inter alia, of back pay, front pay, benefits and compensatory and liquidated damages against Defendant.

## DAMAGES

134.    As  a  direct  and  proximate  consequence  of  Defendant's  unlawful  and discriminatory employment policies and practices, Plaintiff James Rock has suffered a loss of income, including, but not limited to, past and future wages, benefits, expenses, payment for insurance and various other expenses, pain and suffering, compensatory damages and punitive damages, all to be specified at trial.

## INJUNCTIVE RELIEF

135.    Plaintiff James Rock restates, realleges, reavers and hereby incorporates by reference all allegations of paragraphs 1 through 110, inclusive, herein.  In addition, Plaintiff James Rock alleges that Defendant's discriminatory actions herein must be

enjoined by this Court to force to Defendant to comply with the law.  It is suggested that the injunction be specific in enjoining Defendant and its employees, agents and representatives.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff James Rock respectfully prays for judgment against Defendant as follows:

A.  For a money judgment representing compensatory damages, including, lost wages, past and future wages, all other sums of money, including all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

B.  For a money judgment representing punitive damages for Defendant's willful violations of law; liquidated (compensatory) damages pursuant to 29 U.S.C. §626(b);

C.  For a money judgment representing prejudgment interest, if applicable;

D.  Reinstatement and restoration of benefits upon conditions that Plaintiff James Rock and supervisors be enjoined to comply with the law.

E.  That this Court retain jurisdiction over this action until Defendant has fully complied with the orders of this Court, and that this Court require Defendant to file all reports necessary and to supervise compliance with the law that all matters related hereto be done in conformance with the applicable provisions;

F.  For lost monies and damages pertaining to out-of-pocket expenses, especially related to, but not limited to, medical expenses, and loss of retirement benefits;

G.  For suit costs, including an award for reasonable attorney's fees, expert fees, and for such other and further relief as may be just and proper.

**<u>JURY DEMAND</u>**

Plaintiff James Rock herein demands a trial by jury of all issues in this action pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated this 21st day of May 2020.

_____
Kevin F. Sanderson, Esq.
Florida Bar No. 0598488
Kevin F. Sanderson, Chartered
7717 Holiday Drive
Sarasota, Florida 34321
Tel: (941) 444-1548
Fax: (941) 924-0086
kevin@srqattorney.com
Trial Attorney for Plaintiff