UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES ROCK,

    Plaintiff,

v.   Case No: 8:20-cv-1176-WFJ-AAS

LOUIS DEJOY,
Postmaster General,
United States Postal Service,

    Defendant.
_____/

## ORDER GRANTING SUMMARY JUDGMENT

This matter comes before the Court on the defendant Postmaster General of the United States Postal Service's ("USPS") Motion for Summary Judgment, Dkt. 26. Plaintiff James Rock filed a response, Dkt. 28, to which Defendant filed a reply, Dkt. 29. The Court also heard from the parties at a hearing on January 13, 2022. Upon careful consideration, this Court grants Defendant's motion.

### BACKGROUND

Plaintiff, who was diagnosed with Type 1 Diabetes in 1999, began working as a mail handler for USPS in 2007. Dkt. 1 at 3; Dkt. 26-1 at 1. While working at the Ybor City Processing and Distribution Center ("PD&C") in January 2014, Plaintiff was approved under the Family and Medical Leave Act to take intermittent leave up to twice a month for three-to-four hours per diabetic episode.

Dkt. 26-1 at 1. In October 2014, Plaintiff also requested and received the reasonable accommodation of no longer working between midnight and 6:00 AM. *Id.*; Dkt. 26-3 at 38. Pursuant to an unrelated Equal Employment Opportunity ("EEO") settlement, Plaintiff was given a schedule change in February 2015 that placed him in a mail handler position at the Manasota P&DC. Dkt. 26-1 at 2. The record indicates that Plaintiff did not reapply for any reasonable accommodations upon starting at the Manasota P&DC. *Id.*

Plaintiff's time at the Manasota P&DC was not without conflict. In June 2015, Plaintiff yelled and swore at female co-workers passing his workstation, resulting in his suspension for seven days. *Id.* at 15–16. Plaintiff next received a fourteen-day suspension on November 12, 2015, after he admittedly made threatening and insulting statements to Supervisor Marie Schofield after she questioned him about an extended break. *Id.* at 4–5; Dkt. 23-3 at 58. A co-worker who witnessed this incident described Plaintiff's behavior as verbally abusive. Dkt. 23-13 at 11. Plaintiff did not serve this fourteen-day suspension, as he subsequently filed a sexual harassment grievance that stayed the penalty pending investigation. Dkt. 26-1 at 6.

The day after receiving his fourteen-day suspension, Plaintiff was involved in another verbal altercation at work. *Id.* at 6. On November 13, 2015, Plaintiff sought to give Supervisor Schofield a PS Form 1767, which USPS employees use

2

to report unsafe workplace conditions or practices, while she was in a meeting. *Id.* When Supervisor Schofield asked Plaintiff to wait to give her the form at the conclusion of her ongoing meeting, witnesses stated that Plaintiff became angry and loud. *Id.* at 6. After banging on the glass of the meeting room door, Plaintiff was escorted out of the facility and paid for his shift. *Id.* at 7; Dkt. 26-16 at 7.

In December 2015, Plaintiff contacted the EEO Office for information regarding pre-complaint counseling. Dkt. 26-1 at 2. Plaintiff then filed an EEO complaint in late March 2016, alleging that Defendant engaged in sex discrimination, disability discrimination, and retaliation based on five issues based, in part, on the above events. Dkt. 26-9.

In the weeks before Plaintiff filed his EEO complaint, a confrontation took place between Plaintiff and another mail handler, Nathan Elliott. Dkt. 26-1 at 8. On March 5, 2016, Supervisor Schofield instructed the two men to share a workspace to process mail at a faster pace. *Id.* at 7. Plaintiff contends that Supervisor Schofield knew that he and Mr. Elliott did not get along yet ordered them to work together anyway. Dkt. 1 at 5−6. Plaintiff allegedly made several derogatory, threatening statements toward Mr. Elliott, Dkt. 26-1 at 8, though Plaintiff asserts that Mr. Elliott made similar statements toward him, Dkt. 1 at 6. Mr. Elliott, who had no active disciplinary record at the time, was escorted out of the building, turned in his postal service identification as requested by management, and

received a letter of warning. Dkt. 26-1 at 9. Plaintiff left the building and ignored management's request to hand over his identification. *Id.* In the days after this incident, Supervisor Schofield completed an investigative interview with Mr. Elliott. *Id.* at 10. The supervisor also attempted to hold investigative interviews with Plaintiff on March 9, March 10, and March 15, 2016, but Plaintiff refused to partake each time. *Id.* at 10−11.

Because Plaintiff failed to participate in an investigative interview with Supervisor Schofield, Manager of Distribution Operations Paul Clayton scheduled an investigative interview with Plaintiff for May 31, 2016. *Id.* at 11−12. However, Plaintiff called out sick on the day of the interview. *Id.* at 12. Manager Clayton rescheduled the interview for June 7, 2016, but this interview was cut short after Plaintiff became angry, used profanity, threatened to sue Manager Clayton, and refused to answer questions. *Id.* Manager Clayton told Plaintiff he was being put on Emergency Placement and needed to give up his postal service identification. *Id.* Plaintiff allegedly threw his identification at Manager Clayton, balled up his fist, and moved to within inches of Manager Clayton's face. *Id.* at 12−13. Manager Clayton reported that as he escorted Plaintiff out of the building, Plaintiff used profanities and made expletive gestures. *Id.* at 13.

Manager Clayton again attempted to hold an investigative interview with Plaintiff on June 22, 2016, but Plaintiff reported to another supervisor that he was

4

already set to take annual leave that week. *Id.* at 14. The interview was therefore rescheduled for July 14, 2016. *Id.* Though Plaintiff attended the July 14th interview, he again refused to answer any questions. *Id.* Plaintiff subsequently amended his EEO complaint in July 2016 to bring sixth and seventh issues alleging race discrimination, sex discrimination, and retaliation based on these incidents with Manager Clayton. Dkt. 26-10.

On August 16, 2016, Defendant issued Plaintiff a Notice of Removal, thereby terminating his employment. Dkt. 26-19. The notice charged Plaintiff with "Unacceptable Conduct," citing Plaintiff's altercation with Mr. Elliott and his failure to cooperate with investigative interviews. *Id.* at 1–2. The notice also pointed to several standards of conduct in the USPS Employee Relations and Labor Manual that Defendant failed to meet, including sections 665.15 (Obedience to Orders), 665.16 (Behavior and Personal Habits), 665.24 (Violent and/or Threatening Behavior), and 665.3 (Cooperation in Investigations). *Id.* at 4. Given that Defendant's disciplinary policy escalates from a seven-day suspension to a fourteen-day suspension to termination, the notice also listed Plaintiff's past seven-day and fourteen-day suspensions. *Id.* at 5; Dkt. 26-23 at 49. Plaintiff thereafter amended his EEO complaint again to add an eighth issue alleging sex discrimination and retaliation regarding his termination. Dkt. 26-12.

Of the eight issues Plaintiff presented to the Equal Employment Opportunity

5

Commission ("EEOC"), an Administrative Judge dismissed two as untimely and found that the other six failed to demonstrate any discrimination or harassment. Dkt. 26-27 at 4. The EEOC ultimately adopted the Administrative Judge's rulings in a final order. *Id.* Plaintiff appealed the final order to the EEOC Office of Federal Operations, which affirmed and issued a right to sue letter. *Id.* at 9−10.

Plaintiff now brings a four-count complaint pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging sex discrimination, disability discrimination, and retaliation based on the following six issues considered by the EEOC:

> Alleged discrimination based on sex (male), physical disability (diabetes), and retaliation for prior EEO activity related to:
>
> 1) alleged mandated end-tour overtime in October 2015, January 2016, February 2016, and March 2016 in violation of his reasonable accommodation;
>
> 2) the fourteen-day suspension issued on November 12, 2015;
>
> 3) management's decision to refuse his PS Form 1767, remove him from the facility, and place him "off the clock" on November 13, 2015;

Alleged retaliation (prior and current EEO activity)[1] related to:

    4) being subjected to an investigative interview, escorted out of the building, and put on Emergency Placement on June 7, 2016;

    5) being scheduled for an investigative interview on a date conflicting with his annual leave schedule and being rescheduled for an interview on July 14, 2016;

And alleged retaliation (prior and current EEO activity)[2] related to:

    6) the issuance of a Notice of Removal on August 16, 2016.

Plaintiff states that he has exhausted all administrative remedies for these claims. Dkt. 1 at 3. After filing an answer and affirmative defenses, Dkt. 17, Defendant now moves for summary judgment, Dkt. 26.

## LEGAL STANDARD

A district court should grant summary judgment only when it determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim that might affect the outcome of the case. *Allen v. Tyson*

---

[1] While Plaintiff's complaint also alleges sex discrimination and race discrimination as to incidents (4) and (5), Plaintiff's counsel conceded at the hearing before this Court that Plaintiff waived those claims in his 2016 EEO affidavit. *See* Dkt. 26-11 at 39.

[2] Plaintiff's complaint also alleges sex discrimination as to incident (8), but Plaintiff's counsel conceded that—as with incidents (6) and (7)—this claim was waived by Plaintiff's statements in his 2016 EEO affidavit. *See* Dkt. 26-11 at 50.

7

*Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, in its entirety, could lead a rational trier of fact to find for the nonmovant. *Id.* The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Id.*

In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). Upon doing so, the court must determine whether a rational jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the inferences arising from undisputed facts, a court should deny summary judgment. *Allen*, 121 F.3d at 646.

## ANALYSIS

### Standard for Rehabilitation Act Claims

Claims brought under the Rehabilitation Act are governed by the same standards as those brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq. Sutton v. Lader*, 185 F.3d 1203, 1207 n.5 (11th Cir. 1999). The Rehabilitation Act forbids federal agencies from discriminating in the employment of an otherwise qualified individual with a disability. *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000). The Act also prohibits an employer

from retaliating against an individual for participating in an activity protected thereunder. 29 U.S.C. § 791(f) (incorporating ADA's anti-retaliation provisions).

A plaintiff's reliance on circumstantial evidence to establish a *prima facie* case of disability discrimination requires a court to analyze the claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Thatcher v. Dep't of Veterans Affs.*, No. 20-12476, 2021 WL 4940824, at *2 (11th Cir. Oct. 22, 2021). Accordingly, a plaintiff must begin by showing that (1) he has a disability, (2) he is otherwise qualified for a position, and (3) he was subjected to unlawful employment discrimination due to his disability. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017). If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant employer to proffer a legitimate, nondiscriminatory reason for its action. *Collier v. Harland Clarke Corp.*, 820 F. App'x 874, 878 (11th Cir. 2020). The burden then shifts back to the plaintiff to show how this nondiscriminatory reason is pretextual. *Id.*

Similarly, claims of retaliation based on circumstantial evidence are also analyzed using the *McDonnell Douglas* framework. *Thatcher*, 2021 WL 4940824, at *3. A plaintiff therefore bears the initial burden of showing that (1) he engaged in an activity protected by the Rehabilitation Act, (2) he suffered an adverse employment action, and (3) the protected activity and adverse action were causally

connected. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021). An adverse action and protected activity are causally connected if the plaintiff demonstrates that retaliation for engaging in protected activity was the but-for cause of the adverse action. *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant employer to provide evidence of a non-retaliatory justification for the adverse action. *Todd*, 998 F.3d at 1219. The burden will then shift back to the plaintiff for a chance to show that the defendant's given reason is pretextual. *Id.*

**Standard for Title VII Claims**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination and retaliation based on sex, race, color, national origin, and religion. 42 U.S.C. § 2000e-2. While these claims have traditionally been assessed under the *McDonnell Douglas* framework, recent decisions of the United States Supreme Court and the Eleventh Circuit signal a change in the Title VII analysis based on the interpretation of a similarly worded statute.

Using principles of statutory interpretation, the Supreme Court recently held that a standard more lenient than but-for causation applies in discrimination cases brought under the federal-sector provision of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a). *Babb v. Wilkie*, 140 S. Ct. 1168, 1173−74 (2021). This provision provides that employers' personnel actions must

10

be "made free from any discrimination." 29 U.S.C. § 633a(a). The Supreme Court interpreted this language to mean that a plaintiff seeking to establish liability need only show that age discrimination was a but-for cause of his differential treatment—not a but-for cause of his employer's ultimate decision. *Babb*, 140 S. Ct. at 1174. Put differently, a federal-sector employer will be liable under the ADEA if age discrimination played "*any part* in the way a decision [was] made." *Id.* (emphasis added).

Acknowledging that the federal-sector provisions of the ADEA and Title VII are "materially identical," the Eleventh Circuit expanded upon the Supreme Court's holding to find that the "free from any discrimination" standard also applies to sex discrimination and retaliation claims brought under Title VII. *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1198−2000 (11th Cir. 2021). The Eleventh Circuit has therefore replaced the application of the *McDonnell Douglas* framework—which imposes a but-for causation standard—with the "free from any discrimination" standard for claims of Title VII liability. *Durr v. Sec'y, Dep't of Veterans Affs.*, 843 F. App'x 246, 247 (11th Cir. 2021). Establishing but-for causation remains necessary to obtain certain remedies, however, such as reinstatement, backpay, and compensatory damages. *Babb*, 992 F.3d at 1204 n.8 (quoting *Babb*, 140 S. Ct. at 117−78).

**Plaintiff's Claims**

Applying the above standards to Plaintiff's Rehabilitation Act and Title VII claims, the Court addresses Plaintiff's six presented issues in turn.[3]

**(1) Mandated End-Tour Overtime**

Plaintiff first alleges that Defendant required him to work end-tour overtime in violation of his reasonable accommodation on the following dates: October 31, 2015; January 12–14, 2016; February 27, 2016; and March 1, 2016. Plaintiff contends that he had a reasonable accommodation to not work past midnight, so requiring him to work this end-tour overtime amounted to disability discrimination and retaliation. He also asserts requiring end-tour overtime on some of these dates constituted sex discrimination and retaliation, as he filed a sexual harassment grievance in November 2015. Defendant responds that, in addition to providing no evidence of any discrimination or retaliation, Plaintiff never actually worked past midnight on any of the alleged dates.

The Court begins by noting that Plaintiff did not have an approved reasonable accommodation during this time at the Manasota P&DC. Handbook EL-307 of the USPS Employee and Labor Relations Manual explains that an employee with a disability must reapply for reasonable accommodations when

---

[3] Because it is not entirely clear which of the six issues presented to the EEOC are alleged in each of Plaintiff's four counts, the Court structures its analysis based on these six issues.

"being considered for a different job (either through bid, application or other procedures)." Dkt. 26-6 at 3. While Plaintiff previously received a reasonable accommodation to not work past midnight at the Ybor City P&DC, he failed to reapply for the same accommodation in his new position at the Manasota facility.

Even if Plaintiff had a valid reasonable accommodation at the Manasota P&DC, he offers no evidence showing that he actually worked past midnight on any of the above dates. In fact, USPS time records show the opposite, as timestamps indicate that Plaintiff clocked out before midnight on each date in question. Dkt. 26-3 at 40−44. Plaintiff admitted at his deposition that he has no evidence to the contrary. *Id.* at 47. With no evidence to suggest that he actually worked past midnight on those dates, Plaintiff has not carried his initial burden of showing that he suffered an adverse employment action—a requirement for establishing a *prima facie* case under both the Rehabilitation Act and Title VII. Defendant is therefore entitled to summary judgment on this issue.

**(2) Fourteen-Day Suspension**

Next, Plaintiff contends that the fourteen-day suspension he received on November 12, 2015, was the result of sex discrimination, disability discrimination, and retaliation. Plaintiff admits that he received this suspension after making vulgar and inappropriate statements toward Supervisor Schofield during an incident in which Plaintiff was described by a witness as being verbally abusive.

Prior to this altercation, Plaintiff already had an active disciplinary record due to his previous seven-day suspension for yelling and swearing at co-workers. Based on USPS's escalating disciplinary policy, Defendant had the authority to issue a fourteen-day suspension for this incident.

Plaintiff has not shown how this claim warrants liability for discrimination or retaliation under the Rehabilitation Act or Title VII. Regarding his Rehabilitation Act claims, Plaintiff fails to satisfy his *prima facie* burden under the *McDonnell Douglas* framework. He has not demonstrated how this reprimand was based upon or related to his diabetes or protected activity. Similarly, as to his Title VII claims, Plaintiff has not shown how his sex or protected activity played any part in this suspension. He also fails to identify a valid comparator for these sex discrimination claims, as he does not point to any similarly situated individual who was treated differently. For these reasons, Defendant is entitled to summary judgment as to incident (2).

**(3) Refusal of PS Form 1767**

The third issue brought by Plaintiff is an allegation that management's decision to refuse his PS Form 1767, remove him from the facility, and place him off the clock on November 13, 2015, constituted retaliation and discrimination on the basis of sex and disability. However, the Court need not address allegations that Plaintiff was placed off the clock, as Plaintiff has since conceded that he was

paid that day. Dkt. 31 at 4. Regarding the refusal of his form and his removal from the facility, Defendant contends that Plaintiff was only escorted out of the Manasota PD&C prior to his supervisor's receipt of the form because his disruption created a hostile work environment.

Again, Plaintiff provides no evidence to demonstrate how Defendant's actions during this incident relate to his sex, disability, or protected activity. Supervisor Schofield did not outright refuse to take Plaintiff's form; she merely told Plaintiff to hand it to her after her ongoing meeting concluded. Dkt. 26-16 at 6. Had Plaintiff not continued to yell, there is no indication that he would have otherwise been removed from the building. He therefore fails to prove a *prima facie* case under the Rehabilitation Act, as he has not shown any connection between these justified actions and his diabetes or protected activity. Likewise, Plaintiff has not established a *prima facie* case under Title VII due to his failure to show how his sex or protected activity had any role in Defendant's actions. Defendant's removal of Plaintiff from the facility, along with its temporary refusal to accept his PS Form 1767, were warranted. Defendant is entitled to summary judgment on this issue.

**(4) June 7th Interview**

The fourth issue brought by Plaintiff pertains to his investigative interview, subjection to Emergency Placement, and removal from the facility on June 7, 2016.

15

Plaintiff asserts that these actions amount to retaliation under the Rehabilitation Act. However, the June 7th incidents stem from Plaintiff's verbal altercation with Mr. Elliott on March 5, 2016, during which Plaintiff admits to making vulgar, threatening comments toward Mr. Elliott. While Mr. Elliott cooperated with management and participated in an investigative interview with Supervisor Schofield after the altercation, Plaintiff refused to do the same.

Following multiple failed investigative interview attempts, Plaintiff finally met with Manager Clayton on June 7, 2016. Defendant contends that it was only after Plaintiff yelled insults, threatened lawsuits, and refused to answer questions that Manager Clayton justifiably stopped the interview, put Plaintiff on Emergency Placement, and escorted him out of the facility.

Under the *McDonnell Douglas* framework, Plaintiff has not shown that Defendant's June 7th actions were causally connected to any activity protected under the Rehabilitation Act. Plaintiff provides no evidence to suggest that these actions would not have occurred had he not engaged in protected activity. His altercation with Mr. Elliott warranted an investigative interview under USPS policies. When he finally attended an interview on June 7th, he became disruptive, loud, and threatening, thereby justifying his Emergency Placement and removal from the building. Accordingly, summary judgment is warranted for Defendant.

**(5) July 14th Interview Originally Scheduled During Annual Leave**

Plaintiff also claims Manager Clayton's scheduling of an investigative interview on June 22, 2016, was retaliation under the Rehabilitation Act because Plaintiff was already scheduled to take annual leave that day. Manager Clayton rescheduled Plaintiff's interview for July 14, 2016, when Plaintiff was available.

Plaintiff fails to show, as required by the *McDonnell Douglas* framework, that he experienced any adverse action causally connected to protected activity. Given Plaintiff had yet to complete an investigative interview—despite multiple attempts by management—he was scheduled for an interview on June 22nd. Defendant accommodated Plaintiff's annual leave plans by moving the scheduled interview to July 14th. There is no indication that this interview, whether conducted on June 22nd or July 14th, was in response to any protected activity performed by Plaintiff. Defendant is thus entitled to summary judgment.

**(6) Notice of Removal**

Finally, Plaintiff alleges that the Notice of Removal issued by Defendant on August 16, 2016, constitutes retaliation under the Rehabilitation Act. The notice explained that Defendant was terminating Plaintiff's employment based on "Unacceptable Conduct," specifically pointing to his altercation with Mr. Elliott and failure to cooperate with subsequent investigative interviews. The notice cited several standards of conduct listed in the USPS Employee and Labor Relations

Manual to which Plaintiff failed to adhere, and Plaintiff's previous seven-day suspension and fourteen-day suspension were noted. Defendant contends that Plaintiff has not established that his termination was caused by anything other than his continued inappropriate conduct in the workplace. This Court agrees.

By Plaintiff's own admittance, he was involved in multiple verbal altercations and failed to cooperate in five investigative interviews during his less than two years at the Manasota P&DC. Plaintiff's continued inappropriate workplace behavior justified Defendant's termination of Plaintiff's employment. *See Clark v. S. Broward Hosp. Dist.*, 601 F. App'x 886, 898 (11th Cir. 2015) (finding employer presented abundant evidence of plaintiff's workplace misconduct and conflicts to justify her termination). Defendant also adhered to its own escalating disciplinary procedures by terminating Plaintiff only after issuing seven-day and fourteen-day suspensions. Ultimately, Plaintiff provides no evidence in support of his retaliation claim that a causal connection existed between his termination and any protected activity. As with the other issues raised by Plaintiff, Defendant is entitled to summary judgment.[4]

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for

---

[4] The Court notes that Plaintiff's Rehabilitation Act claims fail even if analyzed under the more burdensome *McDonnell Douglas* standard previously utilized for such claims in the Eleventh Circuit.

Summary Judgment, Dkt. 26. The Clerk is directed to enter judgment accordingly and close the case.

      **DONE AND ORDERED** at Tampa, Florida, on January 20, 2022.

                                          */s/ William F. Jung*
                                          **WILLIAM F. JUNG**
                                          **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record